UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION

IN RE

CANUTE C. SMITH,

DEBTOR.

HEARING DATE: September 24, 2019
HEARING TIME: 9:30 a.m.
HEARING PLACE: Brooklyn

CHAPTER 13

CASE NO. 1-19-42192-ess

JUDGE: Elizabeth S. Stong

**NOTICE OF MOTION REQUESTING ENTRY OF AN ORDER GRANTING *IN REM* RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(4) AND GRANTING CO-DEBTOR RELIEF PURSUANT TO § 1301(c) WITH RESPECT TO THE FIRST MORTGAGE LIEN ON REAL PROPERTY LOCATED AT 114-22 170TH STREET A/K/A 11422 170TH STREET, JAMAICA, NY 11434 OR, IN THE ALTERNATIVE, GRANTING RELIEF PURSUANT TO 11 U.S.C. § 362(d)(1)**

**PLEASE TAKE NOTICE** that JPMorgan Chase Bank, N.A. as servicer for JPMC Specialty Mortgage LLC f/k/a WM Specialty Mortgage LLC by and through its undersigned counsel, will move this Court as set forth below:

JUDGE:                              HON. Elizabeth S. Stong

RETURN DATE & TIME:    September 24, 2019 at 9:30 a.m.

COURTHOUSE:                 United States Bankruptcy Court
                                        271 Cadman Plaza East
                                        Brooklyn, NY 11201

RELIEF REQUESTED:        Entry of an order pursuant to 11 U.S.C. § 362(d)(4) providing that any subsequent bankruptcy filings affecting real property described herein shall not, as provided by § 362(d)(4), operate as a stay against such real property for a period of two years from the entry of such an order; or, in the alternative, for an order pursuant to 11 U.S.C. § 362(d)(1) granting relief from the automatic stay; Movant also seeks to vacate the co-debtor stay imposed by 11 U.S.C. § 1301(a) pursuant to 11 U.S.C. § 1301(c)(3) with respect to the co-debtor/co-mortgagor on the subject mortgage to wit: Caroline A. Smith as to the subject property, and for such other and further relief as this Court may deem just and proper.

10-002508

**PLEASE TAKE FURTHER NOTICE,** that answering affidavits, if any, to the relief requested, must be served upon and received by Shapiro, DiCaro & Barak, LLC at their offices at 175 Mile Crossing Boulevard, Rochester, NY 14624 and filed with the Clerk of the United States Bankruptcy Court for the Eastern District of New York District of New York at United States Bankruptcy Court, United States Bankruptcy Court, 271 Cadman Plaza East, Brooklyn, NY 11201 no later than seven (7) days prior to the return date of this motion.

Dated:      September 4, 2019
            Rochester, New York

                                    /s/ *Nicole DiStasio*
                                    Nicole DiStasio
                                    Bankruptcy Attorney
                                    Shapiro, DiCaro & Barak, LLC
                                    Attorneys for JPMorgan Chase Bank, N.A. as
                                    Servicer for JPMC Specialty Mortgage LLC f/k/a
                                    WM Specialty Mortgage LLC
                                    175 Mile Crossing Boulevard
                                    Rochester, NY 14624
                                    Telephone: (585) 247-9000
                                    Fax: (585) 247-7380

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS NOTICE IS REQUIRED BY THE PROVISIONS OF THE FAIR DEBT COLLECTIONS PRACTICES ACT AND DOES NOT IMPLY THAT WE ARE ATTEMPTING TO COLLECT MONEY FROM ANYONE WHO HAS DISCHARGED THE DEBT UNDER THE BANKRUPTCY LAWS OF THE UNITED STATES.**

TO:      SERVICE LIST

10-002508

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION

IN RE

CANUTE C. SMITH,

DEBTOR.

HEARING DATE: September 24, 2019
HEARING TIME:  9:30 a.m.
HEARING PLACE:  Brooklyn

CHAPTER 13

CASE NO. 1-19-42192-ess

JUDGE: Elizabeth S. Stong

**MOTION REQUESTING ENTRY OF AN ORDER GRANTING *IN REM* RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(4) AND GRANTING CO-DEBTOR RELIEF PURSUANT TO § 1301(c) WITH RESPECT TO THE FIRST MORTGAGE LIEN ON REAL PROPERTY LOCATED AT 114-22 170TH STREET A/K/A 11422 170TH STREET, JAMAICA, NY 11434 OR, IN THE ALTERNATIVE, GRANTING RELIEF PURSUANT TO 11 U.S.C. § 362(d)(1)**

Nicole Distasio, an attorney at law duly admitted to practice before the Courts of the State of New York and the U.S. District Court for the Eastern District of New York, hereby affirms the following to be true under penalty of perjury:

1.  I am an associate with the law firm of Shapiro, DiCaro & Barak, LLC, attorneys for JPMorgan Chase Bank, N.A. as servicer for JPMC Specialty Mortgage LLC f/k/a WM Specialty Mortgage LLC ("Movant" or "Secured Creditor"), a secured creditor of Canute C. Smith ("Debtor") and Caroline A. Smith (non-filing "Co-Debtor"). As such, I am fully familiar with the facts and circumstances of this case.

2.  I make this Affirmation in support of the within request for an order pursuant to 11 U.S.C. § 362(d)(4)[1] with respect to certain real property described herein, providing that any subsequent bankruptcy filing affecting such real property shall not, as provided by § 362(d)(4), operate as a stay against such real property for a period of two years from the filing of such an order; for an order pursuant to 11 U.S.C. § 1301(c) granting relief from the co-debtor stay; and/or for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) against  the subject

---

[1] Unless otherwise stated, all statutory references are to the provisions of the United States Bankruptcy Code.

property generally described as 114-22 170th Street a/k/a 11422 170th Street, Jamaica, NY 11434 and for such other and further relief as this Court may deem just and proper.

3.   Jurisdiction is conferred on this Court by the provisions of 28 U.S.C. § 1334.  This is a proceeding to terminate and annul the automatic stay and is therefore a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2).

### I. STATEMENT IN SUPPORT OF *IN REM* RELIEF

4.   Over the last **nine (9)** years, a pending foreclosure has been halted or delayed by various tactics, including multiple bankruptcy filings, by Canute C. Smith (the "Debtor").  Each bankruptcy petition filing asserted an interest in the real property located at 114-22 170th Street a/k/a 11422 170th Street, Jamaica, NY 11434 (the "Property").

5.   The first case, *filed one day prior to a scheduled foreclosure sale*, was filed by Canute Smith, aka Mike Smith on February 9, 2017, in the Bankruptcy Court for the Eastern District of New York under Chapter 7 as Case No. 1-17-40575-nhl (the "First Case"). Movant requested relief from the automatic stay in the First Case; relief was granted by Order entered May 8, 2017 [*ECF Docket No.* 20]. The First Case was ultimately dismissed, upon motion of the Trustee, for the Debtor's unexcused failure to provide documents to the Trustee and to appear at the meeting of creditors mandated by 11 U.S.C. § 341(a).  The case was dismissed by Court order on August 21, 2017 [17-40575*, ECF Docket No. 23*].

6.   The second case, *filed one day prior to a scheduled foreclosure sale*, was filed pro se by Canute Smith on November 2, 2017, in the Bankruptcy Court for the Eastern District of New York under Chapter 13 as Case No. 1-17-45892-nhl (the "Second Case"). The Second Case was dismissed, upon motion of the Trustee filed January 25, 2018 [17-45892*, ECF Docket No. 24*]. The case was dismissed by Court order on March 21, 2018 [17-45892*, ECF Docket No. 26*]. It

10-002508

should be noted that Borrower filed a voluntary dismissal application on February 13, 2018 [17-45892*, ECF Docket No. 25*]; the dismissal of the case, however, was pursuant to the Trustee's motion.

7.    The third case, *again filed one day prior to a scheduled foreclosure sale* was filed pro se by Canute Smith, aka Canute C. Smith on September 13, 2018 in the Bankruptcy Court for the Eastern District of New York under Chapter 13 as Case No. 1-18-45238-ess ("Third Case").  The Third Case was a deficient filing without all the required documents and schedules. Request for Judicial Determination Concerning Dismissal Pursuant to 11 U.S.C. Section 521(i) was filed October 30, 2018 [18-45238*, ECF Docket No. 12*]. The Clerk's Office was ordered by the Court to dismiss the case and a Notice or Automatic Dismissal was entered on November 6, 2018 [18-45238*, ECF Docket No. 14*].

8.    The fourth and instant bankruptcy case, *once again filed one day prior to a scheduled foreclosure sale*, was filed by Canute C. Smith on April 11, 2019 in the Bankruptcy Court for the Eastern District of New York under Chapter 13 as Case No. 1-19-42192-ess ("Fourth Case").

9.    In addition to the bankruptcy filings, the Debtor has applied for and been reviewed for loss mitigation options on numerous occasions; each attempt was unsuccessful. State court litigation has further delayed the foreclosure action and scheduled sales.The Property has been noticed to be sold at a foreclosure sale a total of six (6) times over the last three and a half years, all of which have all been canceled or delayed due to the hindering actions taken by Debtor(s).

10.    The Debtor is not utilizing the automatic stay for legitimately seeking a fresh start.  Rather, the multiple bankruptcy filings of the Debtor are an abuse of the automatic stay and the bankruptcy system used to thwart creditors' efforts to enforce their state law rights in their collateral.  There is more than an adequate basis to conclude, under § 362(d)(4), the

multiple and largely unprosecuted cases are part of a scheme to delay, hinder, or defraud the efforts of and other creditors who seek to enforce their state law remedies in the affected real property.

11.     Furthermore, Movant will be irreparably harmed by the continuation of the co-debtor stay absent payments from the debtor and/or co-debtor.  Accordingly, the co-debtor stay should be modified pursuant to U.S.C. § 1301(c)(3) and Movant should be permitted to proceed against the co-debtor.

## II. FACTUAL BACKGROUND

12.     Movant is a secured creditor of Canute C. Smith and Caroline A. Smith, pursuant to a note executed by Canute Smith and Caroline A. Smith on May 27, 2003, whereby Canute Smith and Caroline A. Smith promised to repay the principal amount of $255,000.00 plus interest to Fremont Investment & Loan (the "Note"). To secure the repayment of the Note, Canute Smith and Caroline A. Smith granted Mortgage Electronic Registration Systems, Inc., as nominee for Fremont Investment & Loan a mortgage, which was duly recorded in Queens County Clerk's Office on September 13, 2003 in CRFN 2003000354839 (the "Mortgage," Note and Mortgage, collectively, as the "Loan"), encumbering real property located at 114-22 170th Street a/k/a 11422 170th Street, Jamaica, NY 11434 (the "Property"). The Mortgage was transferred to JPMC Specialty Mortgage LLC f/k/a WM Specialty Mortgage LLC, and said transfer was memorialized by an Assignment of Mortgage executed on May 28, 2010 and recorded July 23, 2010 in CRFN 2010000248029. ("Assignment of Mortgage"). Copies of the Note, Mortgage, and Assignment of Mortgage are annexed hereto as **Exhibit "A."**

13.     Upon information and belief, the Debtor herein own(s) the Property.

14.    The Mortgage was in default on the day the Debtor filed this bankruptcy.  Based upon said default, Movant initiated foreclosure proceedings in the Supreme Court of the State of New York, County of Queens, under index number 18134/2010 (the "Foreclosure Case"). Judgment of Foreclosure and Sale ("JFS") was granted by Hon. Duane Hart, J.S.C. on October 6, 2015, and entered October 8, 2015.  A copy of the JFS is annexed hereto as **Exhibit "B"**.  The filing of the instant bankruptcy stayed said action.

### III.  GROUNDS FOR *IN REM* RELIEF UNDER 11 U.S.C. § 362(d)(4)

15.    Taken together, the four bankruptcy cases provide a more than adequate basis to find that the serial bankruptcy filings are part of a scheme to delay, hinder and defraud secured creditors.

16.    Section 362(d)(4) of the Code states that

> . . .after notice and a hearing, the court *shall* grant relief from the stay. . .
> (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, *if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors* that
> (A)    transfer of all or part ownership of, or other interest in, such real property *without the consent of the secured creditor or court approval*; or
> (B)    multiple bankruptcy filings affecting such real property. If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing.

11 U.S.C. § 362(d)(4) (emphasis added).

17.    To obtain relief under § 362(d)(4), the moving party has the burden of proving that the current filing by the debtor "is part of a scheme, that the scheme involved the transfer of

real property or multiple filings, and that the object of the scheme is to hinder, delay, [or][2] defraud" the moving party.  In re Lemma, 394 B.R. 315, 323 (Bankr. E.D.N.Y. 2008).

18.    Courts have considered several factors in determining whether multiple filings raise an inference of intent to hinder, delay or defraud secured creditors, including (1) debtor's failure to make post-petition payments on the loan, (2) debtor's failure to file the required documents and information necessary to prosecute the bankruptcy, and the timing and (3) the sequencing of the filings.  *See* In re Montalvo, 416 B.R. 381, 386–87 (Bankr. E.D.N.Y. 2009).

19.    When evaluating whether to grant relief under § 362(d)(4), "the mere timing and filing of several bankruptcy cases is an adequate basis from which a court can draw a reasonable inference that the filing of a subsequent case was part of a scheme to hinder, delay, and defraud creditors."  In re Blair, 2009 Bankr. LEXIS 4195, 63 Collier Bankr. Cas. 2d (MB) 513 (noting that each filing occurred on the eve or shortly before significant events effecting the property at issue and consequently granting *in rem* relief).  In addition, when debtor(s) "have evinced no true intention to reorganize their financial affairs . . . but [r]ather they have engaged in serial filings to thwart the efforts of [a secured creditor] to exercise its lawful rights under state law . . . [t]he serial filings are evidence of bad faith, and evidence of the fact that [the debtor(s)] are abusing the bankruptcy process."  In re Montalvo, 416 B.R. 381, 385–86 (Bankr. E.D.N.Y. 2009) (granting *in rem* relief while observing that the various cases filed between the present debtor and co-obligor were dismissed for failure to comply with filing requirements).

20.    The quantity and timing of the Debtor's bankruptcy filings, coupled with the fact the Debtor and Co-Debtor are currently residing in the Property, easily support a finding that Debtor is abusing the bankruptcy process for the purpose of thwarting the rights of secured

---

[2] Prior to the 2010 amendments to the Bankruptcy Code, § 362(d)(4) relief required the filing of a petition that was part of a scheme to "hinder, delay, *and* defraud creditor."  See Pub. L. 111-327, Sec. 2(a)(12)(C) (2010) (emphasis added).

creditors.  Cf. <u>In re Blair,</u> 2009 Bankr. LEXIS 4195, at *6–10 (involving nine cases filed within ten years; *in rem* relief granted); cf. <u>In re Montalvo,</u> 416 B.R. 383–84 (involving six cases filed within a little more than two years; *in rem* relief granted).

21.     The timing of the bankruptcy filings, coupled with the numerous actions taken in the State Court proceedings to delay foreclosure sales raise serious questions regarding Debtor's intent to hinder, delay and defraud Movant.  The timing and sequencing of these events "allows the Court to draw a permissible inference . . . that the instant petition [is] part of a scheme of Debtor to delay, hinder, and defraud" Movant.  <u>In re Montalvo</u>, 416 B.R. at 387.

22.     Lastly, upon information and belief, little to no payment has been made on the Loan secured by the Property in over ten (10) years.  <u>In re Lemma</u>, 394 B.R. 315, 325 (Bankr. E.D.N.Y. 2008) (weighing the borrower and debtor's attempts to fail to render payments to the secured creditor is part of a scheme to delay, hinder, and defraud).

23.     Based on the foregoing, JPMorgan Chase Bank, N.A. is entitled to relief under § 362(d)(4) in light of the numerous bankruptcy filings, several unsuccessful loss mitigation attempts and the Orders to Show Cause filed on the eve of sale dates.  These actions constitute a scheme to hinder, delay, and defraud JPMorgan Chase Bank, N.A. as they attempt to exercise their state law remedies as mortgagees.

## IV.  IN THE ALTERNATIVE, RELIEF IS APPROPRIATE UNDER 11 U.S.C. § 362(d)(1)

24.     In the event this Court finds that *in rem* relief is not warranted, relief from the automatic stay should be granted, for cause, under 11 U.S.C. § 362(d)(1). Pursuant to the Relief from Stay Worksheet, affixed hereto as **"Exhibit C,"** no payments have been received as of the

date of filing and the loan is post-petition due and owing for three (3)  payments (the Loan is

contractually due for the April 1, 2009 payment) as of July 26, 2019:

| PAYMENT DUE DATE | AMOUNT DUE | AMOUNT RECEIVED | AMOUNT APPLIED TO PRINCIPAL | AMOUNT APPLIED TO INTEREST | AMOUNT APPLIED TO ESCROW | LATE FEE CHARGED |
|---|---|---|---|---|---|---|
| 5/1/19-7/1/19 | $2,867.40 per month | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| TOTALS | $    8,602.20 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

25.      Based upon the Exterior Only Residential Appraisal Report ("Appraisal") dated

February 21, 2019, the Property has an estimated fair value of approximately $750,000.00. A

copy of the appraisal is annexed hereto as **Exhibit "D."** As of July 26, 2019, the total debt owed

to Movant equals $586,606.43.

26.      For the reasons set forth herein above, Movant also seeks to vacate the automatic

stay imposed by 11 U.S.C. § 1301(c) pursuant to 11 U.S.C. § 1301(c)(3) with respect to the co-

debtor/co-mortgagor on the subject mortgage to wit: Caroline A. Smith.

27. Movant moves the Court for an Order terminating the pending automatic stay to

allow Movant to send to any party or parties protected by the automatic stay any and all notices

required by applicable state and/or federal law or regulation. Movant further moves the Court to

terminate the automatic stay to allow Movant to take such actions with respect to the Property as

are provided for under applicable nonbankruptcy law, including but not limited to, informing

Debtor(s) of any loan modification, short sale, or other loss mitigation options.

28.     The Debtor, Co-Debtor, Debtor's Attorney, the Chapter 13 Trustee and the Office of the United States Trustee have each been duly served with the within Notice of Motion, Affirmation, Exhibits and proposed Order Vacating Stay, as more fully set forth in the annexed affidavit of mailing.

29.     No prior application has been made for the relief requested herein.

**WHEREFORE**, for the reasons set forth herein, the Secured Creditor respectfully requests that the Movant's Motion for *In Rem Relief* be granted pursuant to 11 U.S.C. 362(d)(4), such that any and all future filings under the Bankruptcy Code during the next two years by any person or entity with an interest in the Property, shall not operate as a stay as to Secured Creditor's enforcement of its rights in and to 114-22 170th Street a/k/a 11422 170th Street, Jamaica, NY 11434; or, in the alternative, for an order pursuant to 11 U.S.C. §§ 362(d)(1) and 1301(c) granting relief from the automatic and Co-Debtor stays, together with any further relief that this Court deems appropriate

Dated: September 4, 2019
      Rochester, New York

                               /s/*Nicole DiStasio*
                               Nicole DiStasio
                               Bankruptcy Attorney
                               Shapiro, DiCaro & Barak, LLC
                               Attorneys for JPMorgan Chase Bank, N.A. as
                               Servicer for JPMC Specialty Mortgage LLC f/k/a
                               WM Specialty Mortgage LLC
                               175 Mile Crossing Boulevard
                               Rochester, NY 14624
                               Telephone: (585) 247-9000
                               Fax: (585) 247-7380

**SHAPIRO, DICARO & BARAK, LLC**
Attorneys for JPMorgan Chase Bank, N.A. as Servicer for
JPMC Specialty Mortgage LLC f/k/a WM Specialty
Mortgage LLC
175 Mile Crossing Boulevard
Rochester, NY 14624
Telephone: (585) 247-9000, Fax: (585) 247-7380
**Nicole DiStasio**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION

| | |
|---|---|
| IN RE | CHAPTER 13 |
| CANUTE C. SMITH, | CASE NO. 1-19-42192-ess |
| DEBTOR. | JUDGE: Elizabeth S. Stong |

## <u>AFFIDAVIT OF SERVICE BY MAIL</u>

STATE OF NEW YORK    )
                     )ss:
COUNTY OF MONROE    )

    I, Lora Mosher, being sworn, say, I am not a party to this action; I am over 18 years of age, I reside in Rochester, New York.

    On __9|4__, 2019 I served the within Notice of Motion, Motion in Support, Exhibits and Proposed Order Granting Relief from Automatic Stay upon:

TO:

        Debtor
        Canute C. Smith
        114-22 170th Street
        Jamaica, NY 11434


        Co-Debtor
        Caroline A. Smith
        114-22 170th Street
        Jamaica, NY 11434

10-002508

Attorney for Debtor
Lorna J. LaMotte
Law Offices of Lorna J. LaMotte PLLC
1120 Avenue of the Americas
Suite 4064
New York, NY 10036


Trustee
Marianne DeRosa
Office of the Chapter 13 Trustee
100 Jericho Quadrangle
Suite 127
Jericho, NY 11753


U.S. Trustee
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014


at the addresses designated by the foregoing individuals for that purpose by depositing a true
copy of same enclosed in a postpaid, properly addressed wrapper, in an official depository under
the exclusive care and custody of the United States Postal Service within the State of New York.

Date: September 4, 2019

_Lora_

Lora Mosher
Bankruptcy Assistant
Shapiro, DiCaro & Barak, LLC
Attorneys for JPMorgan Chase Bank, N.A.
as Servicer for JPMC Specialty Mortgage
LLC f/k/a WM Specialty Mortgage LLC
175 Mile Crossing Boulevard
Rochester, New York 14624
Telephone: (585) 247-9000
Fax: (585) 247-7380

Sworn to before me this
4 day of September , 2019

Notary Public

ELIZABETH FRANKLIN
Notary Public, State of New York
No. 01FR6393248
Qualified in Monroe County
Commission Expires June 10, 2023

10-002508

UNITED STATES BANKRUPTCY COURT          HEARING DATE:  September 24, 2019
EASTERN DISTRICT OF NEW YORK             HEARING TIME:  9:30 a.m.
BROOKLYN DIVISION                        HEARING PLACE:  Brooklyn

IN RE                                    CHAPTER 13

CANUTE C. SMITH,                         CASE NO. 1-19-42192-ess

DEBTOR.                                  JUDGE: Elizabeth S. Stong

**ORDER PURSUANT TO 11 U.S.C. § 362(d)(4)**
**MODIFYING THE AUTOMATIC STAY IMPOSED BY 11 U.S.C. § 362(a)**

Upon the motion, dated September 4, 2019 (the "Motion"), of JPMorgan Chase Bank,

N.A.as servicer for JPMC Specialty Mortgage LLC f/k/a WM Specialty Mortgage LLC, (with

any subsequent successor or assign, the "Secured Creditor"), for an order, pursuant to 11 U.S.C.

§ 362(d)(4), for *in rem* relief from the automatic stay imposed in subsequent cases under 11

U.S.C. § 362(a), such that any and all future filings under the Bankruptcy Code during the next

two years by the debtor herein, Canute C. Smith or any other person or entity with an interest in

the Property shall not operate as a stay as to Movant's enforcement of its rights in and to 114-22

170th Street a/k/a 11422 170th Street, Jamaica, NY 11434 (the "Property") and after due and

sufficient service and notice, the Court having held a hearing on the Motion on September 24,

2019 and no opposition having been submitted; and, after due deliberation, the Court having

determined that the filing of the Debtor's bankruptcy petition was part of a scheme to delay,

hinder, and defraud creditors that has involved multiple bankruptcy filings by the Debtor and

affecting the Property; and good and sufficient cause appearing, including the failure of the

Debtor to perform their duties as a debtor under the Bankruptcy Code in good faith in multiple

bankruptcy cases affecting the Property, it is

**ORDERED** that the automatic stay in effect pursuant to 11 U.S.C. § 362(a) is hereby

vacated for cause pursuant to 11 U.S.C. § 362(d) as to Movant, its agents, assigns or successors

in interest so that Movant, its agents, assigns or successors in interest may take any and all actions pursuant to the Note and Mortgage and applicable state law including but not limited to foreclose its mortgage on the Property; and it is further

**ORDERED,** that under 11 U.S.C. § 362(d)(4), and provided that this order is recorded in conformity therewith, the automatic stay under 11 U.S.C. § 362(a) is terminated as to Movant's interest in the Property, and said order shall be binding in any other case filed under the Bankruptcy Code purporting to affect the Property that is filed not later than two years after the date of this order, such that the automatic stay under 11 U.S.C. § 362(a) shall not apply to Secured Creditor's interest in the Property; and it is further

**ORDERED** the Co-Debtor stay in effect pursuant to 11 U.S.C. § 1301(a) is hereby modified to allow Movant its successors and/or assigns to commence and/or continue with a foreclosure action and eviction proceeding with regard to the Property; and its further

**ORDERED** that the automatic stay is terminated to allow Movant to send to any party or parties protected by the automatic stay any and all notices required by applicable state and/or federal law or regulation and to allow Movant to take such actions with respect to the Property as are provided for under applicable nonbankruptcy law, including but not limited to, informing Debtor(s) of any loan modification, short sale, or other loss mitigation options; and it is further

**ORDERED** that in the event this case is converted to a case under any other chapter of the U.S. Bankruptcy Code, this Order will remain in full force and effect; and it is further

**ORDERED** that the Movant shall promptly report and turn over to the Chapter 13

Trustee any surplus monies realized by any sale of the Property

Dated: _____, _____
        Brooklyn, NY

Enter:

_____
Honorable Elizabeth S. Stong
United States Bankruptcy Judge

10-002508

# Exhibit "A"



# ADJUSTABLE RATE NOTE
(LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

May 27, 2003                    ANAHEIM, CA 92808
　　[Date]                                  [City]                                         [State]

114-22 170TH STREET    JAMAICA, NY 11434

[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $      255,000.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is  FREMONT INVESTMENT & LOAN

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   9.440   %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on   August 1, 2003
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  July 1, 2033  , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  175 N. RIVERVIEW DRIVE, ANAHEIM CA 92808

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $      2,133.03      . This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR INDEX - Single Family - Freddie Mac UNIFORM INSTRUMENT    Form 3590 1/01

-815N (0210)

VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 4                            Initials:

## 4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A)    Change Dates**

The interest rate I will pay may change on the first day of **July 1, 2005**        , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B)    The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C)    Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding     **Six and Ninety-Nine Hundredths**        percentage points (  **6.9900**        %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D)    Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **12.440**        % or less than  **9.4400**        %. Thereafter, my interest rate will never be increased or decreased on any subsequent Change Date by more than **1.5000**        from the rate of interest I have been paying for the preceding period. My interest rate will never be greater than  **16.4400**        % or less than   **9.4400**     %.

**(E)    Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)    Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.    BORROWER'S RIGHT TO PREPAY

**\*SEE PREPAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF\***

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a Prepayment. When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.    LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.0 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

-815N (0210)

Page 3 of 4

Form 3590 1/01
Initials: _____ CS

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

*SEE PREPAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF*

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
CANUTE SMITH                    -Borrower         CAROLINE A SMITH                -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                         -Borrower

*[Sign Original Only]*

Pay to the order of
without recourse.

Fremont Investment & Loan
Steven K. Patton
Vice President

# PREPAYMENT RIDER TO NOTE

This Prepayment Rider is made this **27th**        day of    **May, 2003**        , and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note ("Note") made by the undersigned (the "Borrower") to

**FREMONT INVESTMENT & LOAN**

(the "Lender") of the same date and covering the property located at:

### 114-22 170TH STREET    JAMAICA, NY 11434

(Property Address)

## BORROWER'S RIGHT TO PREPAY

This Prepayment Rider Supersedes Section 5 of the Note

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full or partial prepayment; however, the Note Holder may charge me for the privilege of prepayment. If more than 20% of the original principal amount of this note is prepaid in any 12-month period within **2**        years after the date of this loan, I agree to pay a prepayment charge equal to six months interest on the amount prepaid which is in excess of 20% of the original principal amount of this Note. If I make prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make full prepayment at any time. If I choose to make a partial prepayment the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

| | |
|---|---|
| _Canute Smith_   5/27/05 | _Caroline A Smith_   5/27/03 |
| **CANUTE SMITH**        Date | **CAROLINE A SMITH**        Date |
| _____ | _____ |
| Date | Date |

MSPPY1  04/28/03



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 28 |
|---|---|---|
| Document ID: 2003071200235001 | Document Date: 05-27-2003 | Preparation Date: 07-12-2003 |
| Document Type: MORTGAGE | | |
| Document Page Count: 27 | | |

| PRESENTED: | RETURN TO: |
|---|---|
| NATIONWIDE COURT SERVICES | NATIONWIDE COURT SERVICES |
| 3340 VETERANS MEMORIAL HIGHWAY | 3340 VETERANS MEMORIAL HIGHWAY |
| BOHEMIA, NY 11716 | BOHEMIA, NY 11716 |
| 631-981-4400 | 631-981-4400 |
| DENISEDICAPRIO@NATIONWIDECOURTSERVI | DENISEDICAPRIO@NATIONWIDECOURTSERVI |
| CE.COM | CE.COM |

**PROPERTY DATA**

| Borough | Block Lot | Unit | Address |
|---|---|---|---|
| QUEENS | 12333 214 Entire Lot | | 114-22 170 STREET |
| Property Type: DWELLING ONLY - 2 FAMILY | | | |

**CROSS REFERENCE DATA**

CRFN _____ or Document ID _____ or Year ___ Reel ___ Page ___ or File Number _____

**PARTIES**

| MORTGAGER/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| CAMOTE SMITH | MERS |
| 114-22 170TH STREET | 318 MILLER ROAD |
| JAMAICA, NY 11434 | FLINT, MI 48501 |

☒ Additional Parties Listed on Continuation Page

**FEES AND TAXES**

| Mortgage | | | Recording Fee: | $ | 172.00 |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 255,000.00 | Affidavit Fee: | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 255,000.00 | NYC Real Property Transfer Tax Filing Fee: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: | | | NYS Real Estate Transfer Tax: | | |
| County (Basic): | $ | 1,275.00 | | $ | 0.00 |
| City (Additional): | $ | 2,550.00 | RECORDED OR FILED IN THE OFFICE | | |
| Spec (Additional): | $ | 0.00 | OF THE CITY REGISTER OF THE | | |
| TASF: | $ | 637.50 | CITY OF NEW YORK | | |
| MTA: | $ | 612.50 | Recorded/Filed    10-13-2003 15:31 | | |
| NYCTA: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 5,075.00 | 2003000353835 | | |

City Register Official Signature

NYC DEPARTMENT OF FINANCE
OFFICE OF THE CITY REGISTER



RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)    PAGE 2 OF 29

Document ID: 2003071200235001    Document Date: 05-27-2003    Preparation Date: 07-12-2003
Document Type: MORTGAGE

PARTIES
MORTGAGER/BORROWER:
CAROLINE A. SMITH
114-22 170TH STREET
JAMAICA, NY 11434

PARTIES
MORTGAGEE/LENDER:
FREMONT INVESTMENT AND LOAN
175 NORTH RIVERVIEW DRIVE
ANAHEIM, CA 92808

Mtg Tax $5075.00

Record and Return to:
Nationwide Title Services
3340 Veterans Memorial Highway
Bohemia, New York 11716
631-580-4409; Fax: 631-881-5518

Prepared By:
BARBARA LINDH

Premises Improved
By a 1 or 2 Family Dwelling

——— Space Above This Line For Recording Data ———

Premises:
114-22 170th Street
Jamaica, NY 11434
BL 12383
L 214

# MORTGAGE

Building Ground 2 or 1 or 2 Family
Premises Improved

WORDS USED OFTEN IN THIS DOCUMENT:
(A) "Security Instrument." This document, which is dated May 27, 2005
together with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower." SABUTE SMITH AND KAROLINE A SMITH, HIS WIFE

whose address is 114-22 170TH STREET    JAMAICA, NY 11434
sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under
the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel.
(888) 679-MERS.  FOR PURPOSES OF RECORDING THIS MORTGAGE MERS IS THE
MORTGAGEE OF RECORD.    # MERS  3111 Miller Rd, Flint MI 48312
(D) "Lender." FREMONT INVESTMENT & LOAN

will be called "Lender." Lender is a corporation or association which exists under the laws of
CALIFORNIA                              Lender's address is
175 N. RIVERVIEW DRIVE, ANAHEIM CA 92808

NEW YORK – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3033 1/01

Schedule A Description

Title Number: ▮▮▮▮▮                                                    Page  4

ALL that certain plot, piece or parcel of land, situate, lying and being in the County of Queens, City and State of New York, bounded and described as follows:

BEGINNING at a point on the westerly side of 170th Street distant 215.86 feet southeasterly from the corner formed by the intersection of the southerly side of Linden Boulevard and the westerly side of 170th Street;

RUNNING THENCE southeasterly a distance of 40 feet along the westerly side of 170th Street;

THENCE westerly at right angles to 170th Street, a distance of 100 feet;

THENCE northwesterly on a course parallel with 170th Street, a distance of 40 feet;

THENCE easterly at right angles to 170th Street, a distance of 100 feet to the westerly side of 170th Street at the point or place of BEGINNING.

(E) "Note." The note signed by Borrower and dated May 27, 2003                    , will be called
the "Note." The Note shows that I owe Lender Two Hundred Fifty-Five Thousand and
No/100 ----------------------------------------------------
                              Dollars (U.S. $      255,000.00          )
plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments
and to pay the debt in full by July 1, 2033               .
(F) "Property." The property that is described below in the section titled "Description of the Property," will
be called the "Property."
(G) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and
late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of
Rights in the Property" sometimes will be called the "Sums Secured."
(I) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called
"Riders." The following Riders are to be signed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider   [ ] Condominium Rider           [ ] Second Home Rider
[ ] Balloon Rider           [ ] Planned Unit Development Rider  [X] 1-4 Family Rider
[ ] VA Rider                [ ] Biweekly Payment Rider       [ ] Other(s) [specify]

(J) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable,
judicial opinions will be called "Applicable Law."
(K) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association or
similar organization will be called "Community Association Dues, Fees, and Assessments."
(L) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or
credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where
a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions,
transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."
(N) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of
damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under
the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid
Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A
taking of the Property by any governmental authority by eminent domain is known as "Condemnation."
(O) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the
nonpayment of, or default on, the Loan.
(P) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note,
and (ii) any amounts under Section 3 will be called "Periodic Payment."
(Q) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.)
and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used in
this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a
"federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan"
under RESPA.

Initials: ____ CS

-6A(NY) (0005).01                    Page 2 of 17                    Form 3033 1/01

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**
I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:
(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;
(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and
(C) Keep all of my other promises and agreements under this Security Instrument and the Note.
I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:
(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and
(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
**DESCRIPTION OF THE PROPERTY**
I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:
(A) The Property which is located at
114-22 170TH ST                                                                    [Street]
JAMAICA                          [City, Town or Village] , New York 11434        [Zip Code].
This Property is in  QUEENS                                County. It has the following legal description:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;
(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"
(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

Initials: 

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:

1. Borrower's Promise to Pay. I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. Application of Borrower's Payments and Insurance Proceeds. Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

(a) Borrower's Obligations.

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

-6A(NY) (0005).01                    Page 5 of 17        Initials: _____        Form 3033 1/01

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations.

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Escrow Funds.

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4. Borrower's Obligation to Pay Charges, Assessments And Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior

-6A(NY) (0005).01                    Page 6 of 17                 Initials: _AL_ _CC_                 Form 3033 1/01

to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5.  **Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to, earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period

Initials: _SM_ _CS_

that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Borrower's Obligations to Occupy The Property. I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.

(a) Maintenance and Protection of the Property.

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) Lender's Inspection of Property.

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

-6A(NY) (0005).01                    Page 6 of 17              Initials: _____        Form 3033 1/01

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes

coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. Agreements About Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the

Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

(a) Borrower's Obligations.

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) Lender's Rights.

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Borrower's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing

Initials: _Quh_ CS

any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

-6A(NY) (0005).01                    Page 12 of 17                    Initials: _____  CS                    Form 3033 1/01

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued. Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance. The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which

will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another

Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

☑ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

Initials: _____

-6A(NY) (0005).01                    Page 15 of 17                    Form 3033 1/01

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____

_____ (Seal)
CANUTE SMITH                                    -Borrower

_____

_____ (Seal)
CAROLINE A SMITH                              -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                             -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                             -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                             -Borrower

STATE OF NEW YORK,                                          County ss:  *Nassau*

On the 27 day of May 2003 before me, the undersigned, a notary public in and for said state, personally appeared

*Carole Smith & Caroline A Smith*

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

                                                                Notary Public

Tax Map Information:

Andrea Madison
Notary Public State of New York
No. 01MA6071016
Qualified in Nassau County
Commission Expires January 6,

# ADJUSTABLE RATE RIDER

THIS ADJUSTABLE RATE RIDER is made this 27th        day of May          2003,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to
**FREMONT INVESTMENT & LOAN**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
**114-22 170TH STREET      JAMAICA, NY 11434**

[Property Address]

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY
INTEREST RATE AND MY MONTHLY PAYMENT. INCREASES IN THE
INTEREST RATE WILL RESULT IN HIGHER PAYMENTS. DECREASES IN
THE INTEREST RATE WILL RESULT IN LOWER PAYMENTS.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of   9.440                    %. The Note provides for
changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A) Change Dates
The interest rate I will pay may change on the first        day of July          2005
and on that day every   sixth         month thereafter. Each date on which my interest rate could change
is called a "Change Date."

**MULTISTATE ADJUSTABLE RATE RIDER - Single Family**

**899R** (0009)
Page 1 of 5          Initials: _____
VMP MORTGAGE FORMS - (800)521-7291

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is: **the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the WALL STREET JOURNAL.**

The most recent Index figure available as of the date:  [X] 45 days  [ ] _____ before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Six and Ninety-Nine Hundredths** percentage points ( **6.9900** %) to the Current Index. The Note Holder will then round the result of this addition to the  [X] Nearest  [ ] Next Highest  [ ] Next Lowest **One-Eighth**
( **0.125** %). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

[ ] Interest-Only Period

The "Interest-only Period" is the period from the date of this Note through **N/A** .
For the interest-only period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the unpaid principal of my loan. The result of this calculation will be the new amount of my monthly payment.

The "Amortization Period" is the period after the interest-only period. For the amortization period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Initials: _____

**(D) Limits on Interest Rate Changes**
(Please check appropriate boxes; if no box is checked, there will be no maximum limit on changes.)

☐ (1) There will be no maximum limit on interest rate changes.

☒ (2) The interest rate I am required to pay at the first Change Date will not be greater than **12.440** % or less than **9.4400** % subsequent %.

☒ (3) My interest rate will never be increased or decreased on any single Change Date by more than **One and One-Half** percentage points ( **1.5000** %) from the rate of interest I have been paying for the preceding period.

☒ (4) My interest rate will never be greater than **16.4400** %, which is called the "Maximum Rate."

☒ (5) My interest rate will never be less than **9.4400** %, which is called the "Minimum Rate."

☒ (6) My interest rate will never be less than the initial interest rate.

☒ (7) The interest rate I am required to pay at the first Change Date will not be greater than **12.440** % or less than **9.4400** % subsequent %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One and One-Half** percentage points ( **1.5000** %) from the rate of interest I have been paying for the preceding period.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

Initials: _____

VMP-899R (0009)                    Page 3 of 5

**B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**©-899R (0009)**                    Page 4 of 5                    Initials: _SW_  GS

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
CANUTE SMITH                     -Borrower

_____ (Seal)
CAROLINE A SMITH                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

-899R (0009)                    Page 5 of 5

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this **27th**        day of **May**                **2003**  ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to
**FREMONT INVESTMENT & LOAN**

(the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:
**114-22 170TH ST**
**JAMAICA, NY  11434**

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to
the Property described in the Security Instrument, the following items now or hereafter attached to the
Property to the extent they are fixtures are added to the Property description, and shall also constitute the
Property covered by the Security Instrument: building materials, appliances and goods of every nature
whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property,
including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity,
gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus,
plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals,
washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods,
attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and
additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument.
All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if
the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument
as the "Property."

MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Initials: _____

Page 1 of 4                    Form 3170 1/01

-57R (0008)          VMP MORTGAGE FORMS - (800)521-7291

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii)

-57R (0008)                    Page 2 of 4                    Initials: _____    Form 3170 1/01

Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

I. CROSS-DEFAULT PROVISION. Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

-57R (0008)                          Page 3 of 4                          Initials: _____

Form 3170 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)       _____ (Seal)
**CANUTE SMITH**          -Borrower    **CAROLINE A SMITH**      -Borrower

_____ (Seal)       _____ (Seal)
                          -Borrower                              -Borrower

_____ (Seal)       _____ (Seal)
                          -Borrower                              -Borrower

_____ (Seal)       _____ (Seal)
                          -Borrower                              -Borrower

-57R (0008)                    Page 4 of 4                    Form 3170 1/01



## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 2 |
|---|---|

Document ID: 2010071900320001    Document Date: 06-28-2010    Preparation Date: 07-19-2010
Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 1

| PRESENTER: | RETURN TO: |
|---|---|
| CLOSING USA | CLOSING USA |
| 250 MILE CROSSING BOULEVARD | 250 MILE CROSSING BOULEVARD |
| SUITE 4 | SUITE 4 |
| ROCHESTER, NY 14624 | ROCHESTER, NY 14624 |
| 585-454-1730 | 585-454-1730 |
| recording@closingusa.com DS100063217 | recording@closingusa.com DS100063217 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 12333 | 214 | Entire Lot | 114-22 170TH STREET |

Property Type: DWELLING ONLY - 2 FAMILY

### CROSS REFERENCE DATA

CRFN: 2003000354839

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| MERS AS NOMINEE | JPMC SPECIALTY MORTGAGE |
| 7255 BAYMEADOWS WAY | 7255 BAYMEADOWS WAY |
| JACKSONVILLE, FL 32256 | JACKSONVILLE, FL 32256 |

### FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 42.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK
Recorded/Filed    07-23-2010 15:45
City Register File No.(CRFN):
2010000248029

*City Register Official Signature*

# Exhibit "B"

# 18134 / 2010

Opened: **7/19/2010** Type: **Lis pendens**

JPMC SPECIALTY MORTGAGE, LLC. F/K/A vs. SMITH,CANUTE C. A/K/A, ET AL

Atty: **SHAPIRO,DICARO & BARAK**     Atty:

| Filed | | Actions | RecRoom |
|---|---|---|---|
| 10/8/2015 | 📄 | JUDGMENT OF FORECLOSURE AND SALE ,BILL OF COSTS | 10/8/2015 |
| 10/8/2015 | 📄 | ORDER SIGNED | 10/8/2015 |
| 10/8/2015 | 📄 | PAPER FILED REPLY AFFIRMATION | 10/8/2015 |
| 10/8/2015 | 📄 | AFFIRMATION ,AFFIRMATION OF LEGAL SERVICES, OATH & REPORT, NON-MILITARY AFFIDAVIT | 10/8/2015 |
| 10/8/2015 | 📄 | AFFIRMATION IN OPPOSITION | 10/8/2015 |
| 10/8/2015 | 📄 | AFFTS,NOTICE OF MOTION | 10/8/2015 |
| 10/8/2015 | 📄 | REDACTION COVER PAGE | 10/8/2015 |
| 9/18/2015 | 📄 | REDACTION COVER PAGE | 9/18/2015 |
| 9/18/2015 | 📄 | RECEIVED PAPERS | 9/18/2015 |
| 7/27/2015 | 📄 | STATEMENT OF SERVICE BY MAIL | 7/27/2015 |
| 7/27/2015 | 📄 | REDACTION COVER PAGE | 7/27/2015 |
| 6/23/2015 | 📄 | STATEMENT OF SERVICE BY MAIL | 6/23/2015 |
| 6/22/2015 | 📄 | RECEIVED PAPERS | 6/22/2015 |
| 6/11/2015 | 📄 | AFFIDAVIT OF SERVICE | 6/11/2015 |
| 5/4/2015 | | AFFTS,NOTICE OF MOTION FEE PAID | 5/4/2015 |
| 2/19/2015 | 📄 | COPY OF ORDER W/NOTICE OF ENTRY WITH AFFT OF SVC | 2/19/2015 |
| 1/12/2015 | 📄 | ORDER SIGNED | 1/12/2015 |
| 1/12/2015 | 📄 | AFFTS,ORDER(REFERENCE & AMENDMENT) | 1/12/2015 |
| 1/12/2015 | 📄 | AFFTS,NOTICE OF MOTION | 1/12/2015 |
| 1/12/2015 | 📄 | AFFIRMATION | 1/12/2015 |
| 1/12/2015 | 📄 | RECEIVED PAPERS | 1/12/2015 |
| 11/20/2014 | 📄 | AFFIDAVIT OF SERVICE | 11/20/2014 |
| 10/15/2014 | 📄 | AFFIDAVIT OF SERVICE | 10/15/2014 |
| 10/14/2014 | 📄 | RECEIVED PAPERS | 10/14/2014 |
| 8/21/2014 | 📄 | AFFIDAVIT OF SERVICE | 8/21/2014 |
| 7/1/2014 | 📄 | AFFIRMATION | 7/1/2014 |
| 7/1/2014 | | AFFTS,NOTICE OF MOTION FEE PAID | 7/1/2014 |
| 7/1/2014 | | AFFIRMATION | 7/1/2014 |
| 8/8/2013 | 📄 | LIS PENDENS B 12333 L 214 | 8/9/2013 |
| 9/13/2011 | 📄 | ORDER SIGNED | 9/13/2011 |
| 6/17/2011 | 📄 | NOTICE OF APPEARANCE | 6/17/2011 |
| 12/22/2010 | 📄 | AFFIDAVITS OF SERVICE (2) | 12/22/2010 |
| 9/30/2010 | 📄 | AFFIDAVITS OF SERVICE (2) | 9/30/2010 |
| 9/27/2010 | 📄 | AFFIDAVIT OF SERVICE 19 | 9/27/2010 |
| 7/29/2010 | 📄 | AFFIDAVIT OF SERVICE 16 | 7/29/2010 |
| 7/29/2010 | 📄 | REQUEST FOR JUDICIAL INTERVENTION | 8/3/2010 |
| 7/28/2010 | 📄 | AFFIDAVITS OF SERVICE (2) | 7/28/2010 |
| 7/27/2010 | 📄 | AFFIDAVIT OF SERVICE (15) | 7/27/2010 |
| 7/26/2010 | 📄 | AFFIDAVIT OF SERVICE | 7/26/2010 |
| 7/26/2010 | 📄 | AFFIDAVIT OF SERVICE | 7/26/2010 |
| 7/19/2010 | 📄 | LIS PENDENS B 12333 L 214 | 7/21/2010 |
| 7/19/2010 | 📄 | SUMMONS W/NOTICE & COMPLAINT | 7/21/2010 |
| | | **Total: 42** | |

# ORIGINAL

At Part *1⊅* of the Supreme Court of the State of New York held in and for the County of Queens, at the Courthouse thereof, at Jamaica, New York, on *October  6*, 2015.

Present: Hon. Duane Hart, J.S.C.

FILED & RECORDED

OCT - 8 2015
COUNTY CLERK
QUEENS COUNTY

---

JPMC Specialty Mortgage LLC f/k/a WM Specialty Mortgage LLC,

**Plaintiff**,

-against-

Canute C. Smith a/k/a Canute Smith; Caroline A. Smith a/k/a Caroline Smith; City of New York Environmental Control Board; City of New York Parking Violations Bureau; City of New York Transit Adjudication Bureau; Dino Riojas; Jose Riojas; Antonela Riojas; Maribel Riojas; Estafano Riojas; Caroline Smith; Tunisha Smith; Richard Smith; Patricia Smith; Yolanda Smith; Ramona Smith; Ryan McFadden; Lisa McFadden; Rosa McFadden; Lionel McFadden,

**Defendants.**

**JUDGMENT OF FORECLOSURE AND SALE**

Index No. 18134/2010

Our File No.: 10-002508

ENTERED
*9:20* (AM)PM
OCT 08 2015
COUNTY CLERK
COUNTY OF QUEENS

Premises:
114-22 170th Street a/k/a
11422 170th Street
Jamaica, NY 11434

**Block 12333 Lot 214**

---

**ON** the Summons, Complaint and Notice of Pendency duly filed in this action on July 19, 2010, on the Additional Notice of Pendency filed on August 8, 2013, and all proceedings thereon; and on reading and filing the Notice of Motion dated *April 28*, 2015 and Affirmation of Regularity of Kathryn Assini, Esq. dated *April 28*, 2015, with exhibits annexed thereto, showing that all of the Defendant(s) herein have been duly served within this State with a copy of the Summons in this action, or have voluntarily appeared by their respective attorneys; and on the proof of service upon and appearance, if any, by the

10-002508

Defendant(s) herein heretofore filed in this action; and stating that more than the legally required number of days have elapsed since said Defendant(s) were so served; and that none of the Defendant(s) have served an answer to said Complaint, nor has their time to do so been extended; and upon the Affirmation of Services rendered of Kathryn Assini dated

_____6/5_____, 2015; and

ON the Order of Reference signed December 19, 2014 and entered on January 12, 2015, appointing Dominic A. Villoni, Esq. as Referee in this action to ascertain and compute the amount due, and to examine the Plaintiff or its agent on oath as to the allegations of the complaint, and to examine and report whether the mortgaged premises should be sold in one or more parcels;

AND on reading and filing of the oath and report of the aforesaid Referee sworn to and dated March 4, 2015, it appears that the sum of $418,439.63 was due the Plaintiff, as of February 28, 2014, plus a per diem interest for every day thereafter, on the date of said Report and that the mortgaged premises should be sold in one parcel.

NOW, on motion of Shapiro, DiCaro & Barak, LLC, the attorneys for the Plaintiff, it is

ORDERED, that the motion is granted ~~without opposition~~; and it is further

ORDERED, ADJUDGED AND DECREED that the report of Dominic A. Villoni, Esq. dated March 4, 2015, be, and the same is hereby, in all respects, ratified and confirmed; and it is further

ORDERED, ADJUDGED AND DECREED that by accepting this appointment the referee certifies that they are in compliance with Part 36 of the Rules of the Chief Judge (22 NYCRR Part 36), including, but not limited to, § 36.2(c) ("Disqualifications from

appointment"), and § 36.2 (d) ("Limitations on appointments based upon compensation"); and it is further

**ORDERED, ADJUDGED, AND DECREED** that the mortgaged premises (Block 12333 Lot 214) as further described in the complaint in this action and hereinafter described, or such part thereof as may be sufficient to discharge the mortgage debt under the note and mortgage, the expenses of the sale and the costs of this action as provided by the Real Property Actions and Proceeding Law be sold, in one parcel, at public auction in the Queens County Supreme Court, 88-11 Sutphin Blvd., Jamaica, New York 11435, in Courtroom #25, at 11:00 a.m. on a Friday by and under the direction of Dominic A. Villoni, Esq., who is hereby appointed Referee for that purpose, in the absence of the designated Referee, the court will designate a substitute referee forthwith; that said Referee give public notice of the time and place of such sale in accordance with law, practice of this Court and RPAPL § 231 in _Newsday_ and that the Plaintiff or any other party to this action may become the purchaser at such sale; that in case the plaintiff shall become the purchaser at the said sale, they shall not be required to make any deposit thereon; that said Referee execute to the purchaser or purchasers on such sale a deed of the premises sold; that in the event a party other than the plaintiff becomes the purchaser or purchasers at such sale they shall be required to tender a deposit of 10% of the purchase price in certified funds and the closing of title shall be had thirty days after such sale unless otherwise stipulated by all parties to the sale and if such closing is required, and the Referee seeks and is awarded additional fees for said closing, those fees shall be paid by purchaser; and it is further,

**ORDERED, ADJUDGED AND DECREED,** that said Referee on receiving the proceeds of the sale, shall forthwith pay therefrom, in accordance with their priority according to law, the taxes, assessments, sewer rents or water rates which are or may become liens on the

10-002508

premises at the time of sale with such interest or penalties which may have lawfully accrued

thereon to the date of payment; and it is further

      **ORDERED, ADJUDGED AND DECREED,** that said Referee then deposit the balance

of said proceeds of sale in his/her own name as Referee in _Signature Bank_
_89-36 Sutphin Blvd, 3rd Floor_
_Jamaica, NY 11435_

and shall thereafter make the following payments and his/her checks drawn for that purpose shall

be paid by said depository;

**FIRST:**         That statutory fees of the Referee in the sum of $500.00.

**SECOND:**    The expenses of sale and the advertising expenses as shown on the bills

                     presented and certified by said Referee to be correct, duplicate copies of

                     which shall be annexed to the report of sale and filed with said Depository

                     and Clerk of this Court. The Referee shall not be held responsible for the

                     payment of penalties or fees pursuant to this appointment. The Purchaser

                     shall hold the Referee harmless from any such penalties or fees assessed.

**THIRD:**      Said Referee shall also pay to the plaintiff or plaintiff's attorney, the sum

                     of $3,895.60 to be determined by the Clerk and adjudged to the Plaintiff

                     for costs and disbursements in this action or as taxed by the Clerk on the

                     Costs of Plaintiff and inserted therein, with interest thereon from the date

                     hereof; together with reasonable attorneys' fees in the sum of $2,000.00 as

                     provided for in paragraph 22 of the mortgage, and also the sum of

                     $418,439.63 the said amount so reported due as aforesaid, together with

                     contractual interest thereon from February 28, 2014, the date interest was

                     calculated to in said report to the date of entry of the Judgment and legal

                     interest thereafter, or so much thereof as the purchase money of the

mortgaged premises will pay of the same, together with any advances

necessarily paid by the Plaintiff for taxes, fire insurance, principal and

interest to prior mortgages to preserve and or maintain the premises not

previously included in any computations, and upon presentation of

receipts for said expenditures to the Referee, all together with interest

thereon pursuant to the note and mortgage.

**FOURTH:**    If such Referee intends to apply for a further allowance for fees, the

Referee may leave upon deposit such amount as will cover such additional

allowance to await the further order of this Court thereon after application

duly made.  Upon due notice to those parties entitled thereof.

That in case the plaintiff be the purchaser of said mortgaged premises at said sale, or in

the event that the rights of the purchasers at said sale and the terms of sale under the judgment

shall be assigned to and be acquired by the plaintiff, and a valid assignment thereof filed with

said Referee, said Referee shall not require the plaintiff to pay in cash the entire amount bid at

said sale, but shall execute and deliver to the plaintiff or its assignee, a deed or deeds of the

premises sold upon the payment to said Referee of the amount specified above in items marked

**"FIRST"** and **"SECOND"** and the amounts of the aforesaid taxes, assessments, sewer rents and

water rates, with interest and penalties thereon, or in lieu of the payment of said last mentioned

amounts, upon filing with said Referee receipts of the proper municipal authorities showing

payment thereof; that the balance of the amount bid, after deducting therefrom the aforesaid

amounts paid by the plaintiff for Referee's fees, advertising expenses, taxes, assessments, sewer

rents and water rates shall be allowed to the Plaintiff and applied by said Referee upon the

amounts due to the plaintiff as specified in item marked **"THIRD"**; that if after so applying the

balance of the amount bid, there shall be a surplus over and above the said amounts due to the

plaintiff, the plaintiff shall pay to the said Referee, upon delivery to plaintiff of said Referee's

deed, the amount of such surplus; that said Referee on receiving said several amounts from the

plaintiff shall forthwith pay therefrom said taxes, assessments, sewer rents, water rates, with

interest and penalties thereon, unless the same have already been paid, and shall then deposit the

balance.

The said Referee shall take the receipt of the Plaintiff or the attorneys for the Plaintiff for

the amounts paid as directed in item **"THIRD"** above, and file it with the report of sale; that

surplus monies be deposited, if any, with the Queens County Clerk within five days after the

same shall be received and be ascertainable, to the credit of this action, to be withdrawn only on

an order of this Court, signed by a Justice of this Court. The Referee shall make the report of

such sale under oath showing the disposition of the proceeds of the sale and accompanied by the

vouchers of the persons to whom payments were made, and shall file it with the Queens County

Clerk within thirty days after completing the sale and executing the proper conveyance to the

purchaser and that if the proceeds of such sale be insufficient to pay the amount reported due to

the Plaintiff with interest and costs as aforesaid, the aforesaid referee shall report the amount of

such deficiency in the report of sale; that the Plaintiff shall recover from the Defendant(s),

Canute C. Smith a/k/a Canute Smith and Caroline A. Smith a/k/a Caroline Smith, unless

discharged in bankruptcy, the whole deficiency or so much thereof as this Court may determine

to be just and equitable of the residue of the mortgage debt remaining unsatisfied after a sale of

the mortgaged premises and the application of the proceeds thereof, provided a motion for a

deficiency judgment shall be made as prescribed by § 1371 of the Real Property Actions and

Proceedings Law within the time limited therein, and the amount thereof if determined and awarded by an Order of this Court as provided for in said section; and it is further

**ORDERED, ADJUDGED AND DECREED,** that the Referee shall not be held responsible for the payment of penalties or fees pursuant to this appointment. Purchaser or any title company hired by the purchaser shall be responsible for any penalties or fees incurred as a result of late payment of the tax as required by City Administrative Code 19 RCNY 23-08(a), which requires payment within 30 days. The purchaser shall hold the Referee harmless from any such penalties assessed as a result of the late payment of these taxes; and it is further

**ORDERED, ADJUDGED AND DECREED,** that the purchaser or purchasers at said sale be let into possession on production or delivery of the Referee's deed or deeds; and it is further

**ORDERED, ADJUDGED AND DECREED** that each and all of the Defendant(s) in this action and all persons claiming under them, or any or either of them, after the filing of such notice of pendency of this action, be and they are hereby forever barred and foreclosed of all right, claim, lien, title, interest, and equity of redemption in said mortgaged premises and each and every part thereof; and it is further

**ORDERED, ADJUDGED AND DECREED,** that said premises is to be sold in one parcel in "as is" physical order and condition, subject to any state of facts that an inspection of the premises would disclose; any state of facts than an accurate survey of the premises would show, any covenants, restrictions, declarations, reservations, easements, rights of way and public utility agreement of record, if any; any building and zoning ordinances of the municipality in which the mortgaged premises is located and possible violations of same; any rights of tenants or persons in possession of the subject premises; prior lien(s) of record, if any, except those liens

10-002508

addressed in § 1354 of the Real Property Actions and Proceeding Law; any equity of redemption of the UNITED STATES OF AMERICA to redeem the premises within 120 days from date of sale; and it is further

**ORDERED,** that a copy of this Judgment with Notice of Entry shall be served upon the owner of the equity of redemption, any tenants named in this action and any other party entitled to notice.

Said premises commonly known as 114-22 170th Street a/k/a 11422 170th Street, Jamaica, NY 11434. A description of said mortgaged premises is annexed hereto and made a part hereof as Schedule A.

Date:

**ENTER,**

Hon. Duane Hart, J.S.C.

CLERK

ENTERED

9:20 AM/PM

OCT 08 2015

COUNTY CLERK
COUNTY OF QUEENS

**FILED & RECORDED**

OCT - 8 2015

COUNTY CLERK
QUEENS COUNTY

Attorney certification pursuant
to 22NYCRR §130-1.1-a
is affixed to inside cover.

10-002508

# Exhibit "C"

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                                   CASE NO.   1-19-42192-ess

    Canute C Smith

                                                         CHAPTER  13

            Debtor(s).
-------------------------------------------------------------x

---

## RELIEF FROM STAY – REAL ESTATE AND
## COOPERATIVE APARTMENTS

---

### BACKGROUND INFORMATION

1. ADDRESS OF REAL PROPERTY OR COOPERATIVE APARTMENT:

    114-22 170th St
    Jamaica, NY 11434

2. LENDER NAME:

    JPMC Specialty Mortgage LLC f/k/a WM Specialty Mortgage LLC

3. MORTGAGE DATE:

    5/27/2003

4. POST-PETITION PAYMENT ADDRESS: 3415 Vision Drive, Mail Code: OH4-7142, Columbus, OH 43219

### DEBT AND VALUE REPRESENTATIONS

5. TOTAL PRE-PETITION AND POST-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AS OF THE
MOTION FILING DATE: $ 586,606.43
*(THIS MAY NOT BE RELIED UPON AS A "PAYOFF" QUOTATION.)*

6. MOVANT'S ESTIMATED MARKET VALUE OF THE REAL PROPERTY OR COOPERATIVE APARTMENT
AS OF THE MOTION FILING DATE: $ 750,000.00

7. SOURCE OF ESTIMATED MARKET VALUE: Exterior Only Residential Appraisal Report

1-19-42192-ess

Reviewer ID: Johanna_Overmoyer_2019-08-29_13:45:14

## STATUS OF THE DEBT AS OF THE PETITION DATE

8. DEBTOR(S)'S INDEBTEDNESS TO MOVANT AS OF THE PETITION DATE:

    A. TOTAL:                                   $_____577,770.89_

    B. PRINCIPAL:                           $_____244,509.08_

    C. INTEREST:                            $_____234,125.53_

    D. ESCROW (TAXES AND INSURANCE):      $_____98,841.28_

    E. FORCED PLACED INSURANCE EXPENDED BY MOVANT:    $_____N/A_

    F. PRE-PETITION ATTORNEYS' FEES CHARGED TO DEBTOR(S):   $_____0.00_

    G. PRE-PETITION LATE FEES CHARGED TO DEBTOR(S):    $_____0.00_

9. CONTRACT INTEREST RATE: ____9.500%_____
*(IF THE INTEREST RATE HAS CHANGED, LIST THE RATE(S) AND DATE(S) THAT EACH RATE WAS IN EFFECT ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE: E .)*

10. OTHER PRE-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)'S ACCOUNT AND NOT LISTED ABOVE:

  Fees, costs due: $295.00

*(IF ADDITIONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE: N/A .)*

## AMOUNT OF POST-PETITION DEFAULT AS OF THE MOTION FILING DATE

11. DATE OF RECEIPT OF LAST PAYMENT: N/A_____

12. NUMBER OF PAYMENTS DUE FROM PETITION DATE TO MOTION FILING DATE: ___3___ PAYMENTS.

Reviewer ID: Johanna_Overmoyer_2019-08-29_13:45:14

13. POST-PETITION PAYMENTS IN DEFAULT:

| PAYMENT DUE DATE | AMOUNT DUE | AMOUNT RECEIVED | AMOUNT APPLIED TO PRINCIPAL | AMOUNT APPLIED TO INTEREST | AMOUNT APPLIED TO ESCROW | LATE FEE CHARGED |
|---|---|---|---|---|---|---|
| 5/1/19 | 2867.40 | | | | | |
| 6/1/19 | 2867.40 | | | | | |
| 7/1/19 | 2867.40 | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| TOTAL: | $    8602.2 | $    0 | $    0 | $    0 | $    0 | $    0 |

14. OTHER POST-PETITION FEES CHARGED TO DEBTOR(S):

A. TOTAL: $ 0.00

B. ATTORNEYS' FEES IN CONNECTION WITH THIS MOTION: $ 0.00

C. FILING FEE IN CONNECTION WITH THIS MOTION: $ 0.00

D. OTHER POST-PETITION ATTORNEYS' FEES: $ 0.00

E. POST-PETITION INSPECTION FEES: $ 0.00

F. POST-PETITION APPRAISAL/BROKER'S PRICE OPINION FEES $ 0.00

G. FORCED PLACED INSURANCE EXPENDED BY MOVANT: $ 0.00

15. AMOUNT HELD IN SUSPENSE BY MOVANT: $      51.36

16. OTHER POST-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)'S ACCOUNT AND NOT LISTED ABOVE: N/A

*(IF ADDITIONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE:  N/A .)*

1-19-42192-ess

Reviewer ID: Johanna_Overmoyer_2019-08-29_13:45:14

## REQUIRED ATTACHMENTS TO MOTION

PLEASE ATTACH THE FOLLOWING DOCUMENTS TO THIS MOTION AND INDICATE THE EXHIBIT NUMBER ASSOCIATED WITH EACH DOCUMENT.

(1)     COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S INTEREST IN THE SUBJECT PROPERTY. FOR PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE PROMISSORY NOTE OR OTHER DEBT INSTRUMENT TOGETHER WITH A COMPLETE AND LEGIBLE COPY OF THE MORTGAGE AND ANY ASSIGNMENTS IN THE CHAIN FROM THE ORIGINAL MORTGAGEE TO THE CURRENT MOVING PARTY. (EXHIBIT __A__.)

(2)     COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S STANDING TO BRING THIS MOTION. (EXHIBIT __A__.)

(3)     COPIES OF DOCUMENTS THAT ESTABLISH THAT MOVANT'S INTEREST IN THE REAL PROPERTY OR COOPERATIVE APARTMENT WAS PERFECTED. FOR THE PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE FINANCING STATEMENT (UCC-1) FILED WITH THE CLERK'S OFFICE OR THE REGISTER OF THE COUNTY IN WHICH THE PROPERTY OR COOPERATIVE APARTMENT IS LOCATED. (EXHIBIT __N/A__.)

Reviewer ID: Johanna_Overmoyer_2019-08-29_13:45:14

## DECLARATION AS TO BUSINESS RECORDS

I,_____JOHANNA OVERMOYER_____, THE _____Vice President_____ OF _____JPMorgan Chase Bank, N.A._____, THE MOVANT HEREIN, DECLARE PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE INFORMATION PROVIDED IN THIS FORM AND ANY EXHIBITS ATTACHED HERETO (OTHER THAN THE TRANSACTIONAL DOCUMENTS ATTACHED AS REQUIRED BY PARAGRAPHS 1 ,2, AND 3, ABOVE) IS DERIVED FROM RECORDS THAT WERE MADE AT OR NEAR THE TIME OF THE OCCURRENCE OF THE MATTERS SET FORTH BY, OR FROM INFORMATION TRANSMITTED BY, A PERSON WITH KNOWLEDGE OF THOSE MATTERS; THAT THE RECORDS WERE KEPT IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY; AND THAT THE RECORDS WERE MADE IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY AS A REGULAR PRACTICE.

I FURTHER DECLARE THAT COPIES OF ANY TRANSACTIONAL DOCUMENTS ATTACHED TO THIS FORM AS REQUIRED BY PARAGRAPHS 1, 2, AND 3, ABOVE, ARE TRUE AND CORRECT COPIES OF THE ORIGINAL DOCUMENTS.

EXECUTED AT _____Columbus, Ohio_____
ON THIS __29__ DAY OF _____August_____, 20 19

NAME: _JOHANNA OVERMOYER_ 8/29/2019
TITLE: Vice President
MOVANT: JPMorgan Chase Bank, N.A.
STREET ADDRESS: 3415 Vision Drive
CITY, STATE AND ZIP CODE: Columbus, OH 43219

## DECLARATION

I,_____JOHANNA OVERMOYER_____, THE _____Vice President_____ OF _____JPMorgan Chase Bank, N.A._____, THE MOVANT HEREIN, DECLARE PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT BASED ON PERSONAL KNOWLEDGE OF THE MOVANT'S BOOKS AND BUSINESS RECORDS.

EXECUTED AT _____Columbus, Ohio_____
ON THIS __29__ DAY OF _____August_____, 20 19

NAME: _JOHANNA OVERMOYER_ 8/29/2019
TITLE: Vice President
MOVANT: JPMorgan Chase Bank, N.A.
STREET ADDRESS: 3415 Vision Dr.
CITY, STATE AND ZIP CODE: Columbus, OH 43219

1-19-42192-ess

# Exhibit "D"

# Exterior-Only Inspection Residential Appraisal Report

File #

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

| | |
|---|---|
| Property Address 114-22 170th St | City Jamaica    State NY    Zip Code 11434 |
| Borrower Canute C Smith    Owner of Public Record Canute C Smith | County Queens |

Legal Description Block 12333, LOT 214

| | | |
|---|---|---|
| Assessor's Parcel # 4-12333-0214 | Tax Year 2019 | R.E. Taxes $ 6958 |
| Neighborhood Name Bronx | Map Reference 28-PP-19 | Census Tract 0266.00 |

Occupant [X] Owner [ ] Tenant [ ] Vacant    Special Assessments $ 0    [ ] PUD    HOA $ 0    [ ] per year [ ] per month

Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe)

Assignment Type [ ] Purchase Transaction [ ] Refinance Transaction [X] Other (describe) Foreclosure Sale Bidding

Lender/Client JP Morgan Chase    Address 800 N State Highway, 121 Bypass, Lewisville, TX 75067

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [ ] Yes [X] No

Report data source(s) used, offering price(s), and date(s).

Propertyshark

**CONTRACT**

I [ ] did [ ] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $    Date of Contract    Is the property seller the owner of public record? [ ] Yes [ ] No   Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [ ] No

If Yes, report the total dollar amount and describe the items to be paid.

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|
| Location [X] Urban [ ] Suburban [ ] Rural | | Property Values [ ] Increasing [X] Stable [ ] Declining | | | PRICE $(000) | AGE (yrs) | One-Unit | 60 % |
| Built-Up [X] Over 75% [ ] 25-75% [ ] Under 25% | | Demand/Supply [ ] Shortage [X] In Balance [ ] Over Supply | | | | | 2-4 Unit | 10 % |
| Growth [ ] Rapid [X] Stable [ ] Slow | | Marketing Time [ ] Under 3 mths [X] 3-6 mths [ ] Over 6 mths | | | 430 Low 1 | | Multi-Family | 25 % |
| | | | | | 965 High 110 | | Commercial | 5% % |
| | | | | | 750 Pred. 60 | | Other | % |

Neighborhood Boundaries

South - 120th Ave, West - Sutphin Blvd, North - 108th Ave, East - 180th Street

Neighborhood Description

This neighborhood is an established area in close proximity to shopping and transportation providing affordable accomodation.

Market Conditions (including support for the above conclusions)

CURRENT MARKET CONDITIONS AND PROPERTY VALUES APPEAR TO BE STABLE. SUPPLY AND DEMAND APPEAR TO BE IN BALANCE. SOME FORECLOSURE AND SHORT SALE ACTIVITY IS OBSERVED AS WELL. LOAN DISCOUNTS AND BUYDOWNS ARE AVAILABLE BUT HAVE LITTLE OR NO EFFECT ON VALUE.

**SITE**

| | | | |
|---|---|---|---|
| Dimensions 40' x 100' (Subject to Survey) | Area 4000 sf | Shape REGULAR | View N;Res; |

Specific Zoning Classification R3A    Zoning Description RESIDENTIAL

Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements-Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | 200 Amp CB | Water | [X] | | Street Asphalt | [X] | [ ] |
| Gas | [X] | | Sanitary Sewer | [X] | | Alley None | [ ] | [ ] |

FEMA Special Flood Hazard Area [ ] Yes [X] No  FEMA Flood Zone X    FEMA Map # 3604970234F    FEMA Map Date 09/05/2007

Are the utilities and off-site improvements typical for the market area? [X] Yes [ ] No If No, describe.

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No If Yes, describe.

**IMPROVEMENTS**

Source(s) Used for Physical Characteristics of Property [ ] Appraisal Files [ ] MLS [ ] Assessment and Tax Records [ ] Prior Inspection [ ] Property Owner

[X] Other (describe) Visual Inspection    Data Source for Gross Living Area Propertyshark

| General Description | | General Description | | Heating / Cooling | | Amenities | | Car Storage | |
|---|---|---|---|---|---|---|---|---|---|
| Units [ ] One [X] One with Accessory Unit | | [ ] Concrete Slab [ ] Crawl Space | | [ ] FWA [X] HWBB | | Fireplace(s) # 0 | | [ ] None | |
| # of Stories 2 | | [X] Full Basement [ ] Finished | | [ ] Radiant | | Woodstove(s) # 0 | | [X] Driveway # of Cars 2 | |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | | [ ] Partial Basement [ ] Finished | | [ ] Other | | Patio/Deck None | | Driveway Surface concrete | |
| [X] Existing [ ] Proposed [ ] Under Const. | | Exterior Walls frame/br/avg | | Fuel Gas | | Porch None | | [ ] Garage # of Cars 0 | |
| Design (Style) COL/DET | | Roof Surface Asph. Sh./avg | | [ ] Central Air Conditioning | | Pool None | | [ ] Carport # of Cars 0 | |
| Year Built 1992 | | Gutters & Downspouts Aluminum/av | | [X] Individual | | Fence None | | [ ] Attached [ ] Detached | |
| Effective Age (Yrs) 16 | | Window Type D/H | | [ ] Other | | Other None | | [ ] Built-in | |

Appliances [X] Refrigerator [X] Range/Oven [X] Dishwasher [ ] Disposal [X] Microwave [ ] Washer/Dryer [ ] Other (describe)

Finished area above grade contains: 12 Rooms   6 Bedrooms   2.0 Bath(s)   2162 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.)

INSULATED WINDOWS, HOT WATER HEATER.

Describe the condition of the property and data source(s) (including apparent needed repairs, deterioration, renovations, remodeling, etc.).

C3;There were some information in public records regarding the condition of the property and based on that and from the exterior visual inspection, it looks in an overall good condition which is supported from the exterior visual inspection. The subject is also assumed to have semi-modern kitchen and bath. External obsolescence noted, the subject property is near place of worship, no other external obsolescence were observed.

Are there any apparent physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No

If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No If No, describe

# Exterior-Only Inspection Residential Appraisal Report
File #

| | | | |
|---|---|---|---|
| There are 5 comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 460000 | | | to $ 999000 |
| There are 18 comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 430000 | | | to $ 965000 |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 114-22 170th St Jamaica, NY 11434 | 11436 168th Street Jamaica, NY 11434 | | 16428 Odonnell Rd Jamaica, NY 11434 | | 11135 172nd Street Jamaica, NY 11434 | |
| Proximity to Subject | | 0.10 miles NE | | 0.23 miles SW | | 0.25 miles SW | |
| Sale Price | $ | | $ 800000 | | $ 725000 | | $ 725000 |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 364.96 sq. ft. | | $ 337.21 sq. ft. | | $ 351.26 sq. ft. | |
| Data Source(s) | | propertyshark #0;DOM Unk | | propertyshark #0;DOM Unk | | propertyshark #0;DOM Unk | |
| Verification Source(s) | | ACRIS | | ACRIS | | ACRIS | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | + (-) $ Adjustment | DESCRIPTION | + (-) $ Adjustment | DESCRIPTION | + (-) $ Adjustment |
| Sale or Financing Concessions | | ArmLth Conv;0 | | ArmLth Conv;0 | | ArmLth Conv;0 | |
| Date of Sale/Time | | s10/18;Unk | | s01/19;Unk | | s10/18;Unk | |
| Location | A;PlOfWorship; | N;Res; | -10000 | A;BoyRd; | 0 | A;PlOfWorship; | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 4000 sf | 4000 sf | | 3829 sf | 0 | 4000 sf | |
| View | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Design (Style) | DT2;COL/DET | DT2;COL/DET | -10000 | SD2;COL/SEMI-ATT | 15000 | SD2;COL/SEMI-ATT | 15000 |
| Quality of Construction | Q4 | Q3 | -10000 | Q4 | | Q4 | |
| Actual Age | 27 | 99 | 0 | 24 | 0 | 59 | 0 |
| Condition | C3 | C3 | | C3 | | C3 | |
| Above Grade | Total / Bdrms. / Baths 12 / 6 / 2.0 | Total / Bdrms. / Baths 12 / 6 / 2.0 | | Total / Bdrms. / Baths 12 / 6 / 2.1 | -5000 | Total / Bdrms. / Baths 9 / 5 / 2.0 | 0 |
| Gross Living Area | 2162 sq. ft. | 2192 sq. ft. | -6000 | 2150 sq. ft. | 2400 | 2064 sq. ft. | 19600 |
| Basement & Finished | 900sf810sfin | 900sf810sfin | | 900sf0sfin | | 900sf484sfin | |
| Rooms Below Grade | 1rr0br1.0ba1o | 1rr0br1.0ba1o | | | 10000 | 1rr0br1.0ba1o | |
| Functional Utility | average | average | | average | | average | |
| Heating/Cooling | hw/units | hw/units | | hw/units | | hw/units | |
| Energy Efficient Items | INS.WINDOWS | INS.WINDOWS | | INS.WINDOWS | | INS.WINDOWS | |
| Garage/Carport | 2dw | 1gd2dw | -5000 | 2dw | | 2dw | |
| Porch/Patio/Deck | None | Balcony | -3000 | None | | None | |
| Net Adjustment (Total) | | □ + ☒ - | $ 34000 | ☒ + □ - | $ 22400 | ☒ + □ - | $ 34600 |
| Adjusted Sale Price of Comparables | | Net Adj. -4.3 % Gross Adj. 4.3 % | $ 766000 | Net Adj. 3.1 % Gross Adj. 4.5 % | $ 747400 | Net Adj. 4.8 % Gross Adj. 4.8 % | $ 759600 |

I ☒ did □ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research □ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)  Propertyshark
My research □ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)  Propertyshark
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | Propertyshark | Propertyshark | Propertyshark | Propertyshark |
| Effective Date of Data Source(s) | 02/21/2019 | 02/21/2019 | 02/21/2019 | 02/21/2019 |

Analysis of prior sale or transfer history of the subject property and comparable sales

The subject property has not been transferred in the last 3 years.

Summary of Sales Comparison Approach

These are the best comparables avaiable. $200/sq. ft. was adjusted for G.L.A.  $3/sq.ft. was used for site.  Most weight was given to comp #2 because it is the most recent comp, comps #1 and 3 were used as supporting comps.

Indicated Value by Sales Comparison Approach $ 750000

Indicated Value by: Sales Comparison Approach $ 750000    Cost Approach (if developed) $ 757400    Income Approach (if developed) $

Greatest emphasis in determining market value has been placed on the sales comparison analysis which is most dependable in the current market reflecting as it does the attitudes and motivations of buyers and sellers trading in such properties.

This appraisal is made ☒ "as is," □ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, □ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or □ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

MARKET VALUATION PURPOSES

Based on a visual inspection of the exterior areas of the subject property from at least the street, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$ 750000    as of 02/21/2019    , which is the date of inspection and the effective date of this appraisal.

# EXHIBIT E

Reviewer ID: Johanna_Overmoyer_2019-08-29_13:45:14

Loan Level Reviewer:  MFR

# JPMorgan Chase Bank, N.A.

Post    Activity Ledger

| General Loan Information | | | | ● Debtor/Trustee Pay  ○ Trustee Pay All | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Loan #: | ▉ | Debtor's Name: | Calvator C Smith | Current Full Payment Amount: | $2,176.95 | POC Filed Date: | N/A | Claim Code: | 156 |
| Case #: | 19-42192 | Joint Debtor: | N/A | Exceptions: | | | | Amended POC Filed Date: | N/A |
| Date Bk Filed: | 4/11/2019 | Bk Filed State: | NY | Exception: | | | | Exception Date: | |
| As of Date: | 7/26/2019 | Contractual Due Date: | 4/1/2009 | Exception: | | | | Exception Date: | |
| Variable Interest: | Yes | Current Bk Status: | Active | Exception: | | | | Exception Date: | |
| Unpaid Principal Balance: | $244,500.08 | Checker: | 13 | Exception: | | | | Exception Date: | |
| Non Credit Events | | Event Type/Date | | Event Type/Date | | | | Event Type/Date | |
| | | Event Type/Date | | Event Type/Date | | | | Event Type/Date | |

If vacant, District that applies

If Service Transfer in the past now Sub-Serviced by PHH?

ENTER the Filed Effective Date of the first POC filed by PHH?

Escrow Balance:    -$100,580.91

Reviewer ID: Johanna_Overmoyer_2019-08-29_13:45:14

Case #: 19-42192  As of Date 07/26/2019

| | | | | Post Payment Ledger | | | | | [Total Due] |
|---|---|---|---|---|---|---|---|---|---|
| Action Type | If Applicable, Suspense Debits | Date Received | Amount Received | Amount Due | Post Petition Date Paid | Payment Amount | Check # / Notes | To / From Suspense | |
| | | | | | | | | | $0.00 |
| Spc Crcmstnce | PCN Credits | | $51.36 | $0.00 | | 0.00 | | $51.36 | $51.36 |
| Delinquent Payment | | | | $2,867.40 | 05/01/19 | 0.00 | | $0.00 | -$2,816.04 |
| Delinquent Payment | | | | $2,867.40 | 06/01/19 | 0.00 | | $0.00 | -$5,683.44 |
| Delinquent Payment | | | | $2,867.40 | 07/01/19 | 0.00 | | $0.00 | -$8,550.84 |

## Summary

| | |
|---|---|
| Avg Days/Month | 30.42 |
| Interest From | 3/1/2009 |
| Interest To | 7/27/2019 |
| UPB | $244,509.08 |
| Interest Rate | 9.500% |
| Number of Days | 3800.00 |
| Amount Per Day | $63.63 |
| Interest amount | $241,137.25 |
| UPB + interest | $485,646.33 |

Start Date — Date Value 4/1/2009

## Interest Calculation Table

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Avg Days/Month | 30.42 | 30.42 | 30.42 | 30.42 | 30.42 | 30.42 | 30.42 | 30.42 | 30.42 | 30.42 | 30.42 | 30.42 |
| Interest From | 3/1/2009 | 7/1/2009 | 1/1/2010 | 7/1/2010 | 1/1/2011 | 7/1/2011 | 1/1/2012 | 7/1/2012 | 1/1/2013 | 7/1/2013 | 1/1/2014 | 7/1/2014 |
| Interest To | 7/1/2009 | 1/1/2010 | 7/1/2010 | 1/1/2011 | 7/1/2011 | 1/1/2012 | 7/1/2012 | 1/1/2013 | 7/1/2013 | 1/1/2014 | 7/1/2014 | 1/1/2015 |
| UPB | $244,509.08 | $244,509.08 | $244,509.08 | $244,509.08 | $244,509.08 | $244,509.09 | $244,509.08 | $244,509.08 | $244,509.08 | $244,509.08 | $244,509.08 | $244,509.08 |
| Interest Rate | 9.75000% | 9.44000% | 9.44000% | 9.44000% | 9.44000% | 9.44000% | 9.44000% | 9.44000% | 9.44000% | 9.44000% | 9.44000% | 9.44000% |
| Number of Days | 122.00 | 184.00 | 181.00 | 184.00 | 181.00 | 184.00 | 182.00 | 184.00 | 181.00 | 184.00 | 181.00 | 184.00 |
| Amount Per Day | $65.30 | $63.23 | $63.23 | $63.23 | $63.23 | $63.23 | $63.23 | $63.23 | $63.23 | $63.23 | $63.23 | $63.23 |
| Interest amount | $7,966.60 | $11,634.32 | $11,444.63 | $11,634.32 | $11,444.63 | $11,634.32 | $11,507.86 | $11,634.32 | $11,444.63 | $11,634.32 | $11,444.63 | $11,634.32 |
| UPB + Interest | $252,475.68 | $256,143.40 | $255,953.71 | $256,143.40 | $255,953.71 | $256,143.40 | $256,016.94 | $256,143.40 | $255,953.71 | $256,143.40 | $255,953.71 | $256,143.40 |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Avg Days/Month | 30.42 | 30.42 | 30.42 | 30.42 | 30.42 | 30.42 | 30.42 | 30.42 | 30.42 | 30.42 | 30.42 | 30.42 |
| Interest From | 1/1/2015 | 7/1/2015 | 1/1/2016 | 7/1/2016 | 1/1/2017 | 7/1/2017 | 1/1/2018 | 7/1/2018 | 1/1/2019 | 7/1/2019 | | |
| Interest To | 7/1/2015 | 1/1/2016 | 7/1/2016 | 1/1/2017 | 7/1/2017 | 1/1/2018 | 7/1/2018 | 1/1/2019 | 7/1/2019 | 7/27/2019 | | |
| UPB | $244,509.08 | $244,509.08 | $244,509.08 | $244,509.08 | $244,509.08 | $244,509.08 | $244,509.08 | $244,509.08 | $244,509.08 | $244,509.08 | | |
| Interest Rate | 9.44000% | 9.44000% | 9.44000% | 9.44000% | 9.44000% | 9.44000% | 9.50000% | 9.50000% | 9.8750% | 9.50000% | | |
| Number of Days | 181.00 | 184.00 | 182.00 | 184.00 | 181.00 | 184.00 | 181.00 | 184.00 | 181.00 | 26.00 | 0.00 | 0.00 |
| Amount Per Day | $63.23 | $63.23 | $63.23 | $63.23 | $63.23 | $63.23 | $63.23 | $63.63 | $66.14 | $63.63 | $0.00 | $0.00 |
| Interest amount | $11,444.63 | $11,634.32 | $11,507.86 | $11,634.32 | $11,444.63 | $11,634.32 | $11,444.63 | $11,707.92 | $11,971.34 | $1,654.38 | $0.00 | $0.00 |
| UPB + Interest | $255,953.71 | $256,143.40 | $256,016.94 | $256,143.40 | $255,953.71 | $256,143.40 | $255,953.71 | $256,217.00 | $256,480.42 | $246,163.45 | $0.00 | $0.00 |